IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RANDALL GROSS and
CLAIRE CHAMPAGNE,

    Plaintiffs,

v.       C.A. No. 14-786-LPS

WEINSTEIN, WEINBURG & FOX, LLC,
DELAWARE MODERN DENTAL, LLC,
ANTONIO RIGHT, DARREN TILLISON,
and TYRA TILLISON,

    Defendants.

---

Mary F. Higgins, Wilmington, DE.

    Attorney for Plaintiffs

William A. Crawford, Krista E. Shevlin, FRANKLIN & PROKOPIK, Wilmington, DE.

    Attorneys for Defendant Delaware Modern Dental, LLC

Darren Tillison, Newark, DE.

    *Pro se* Defendant.

Tyra Tillison, Newark, DE.

    *Pro se* Defendant.

**MEMORANDUM OPINION**

August 24, 2015
Wilmington, DE

![signature](Stark signature)

**STARK, U.S. District Judge:**

Pending before the Court are: (1) a motion to dismiss for failure to state a claim, filed by Defendants Darren Tillison, Tyra Tillison, and Weinstein, Weinburg & Fox LLC ("the Weinstein Defendants") (D.I. 12); (2) a motion to strike or, in the alternative, a motion for more definitive statements, filed by Plaintiffs Claire Champagne and Randall Gross ("Plaintiffs") (D.I. 13) in response to the answer filed by Defendant Delaware Modern Dental ("DMD") (D.I. 10); and (3) a motion for default judgment as to Weinstein, Weinburg, & Fox LLC ("WWF") (D.I. 20). For the reasons below, the Court will deny the Weinstein Defendants' motion to dismiss, grant in part and deny in part Plaintiffs' motion to strike, and will deny without prejudice to renew Plaintiffs' motion for default judgment as to WWF.

## BACKGROUND

Plaintiffs filed this action on June 20, 2014, alleging that Defendants violated provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and Plaintiffs' contractual rights. (D.I. 1) All of Plaintiffs' claims arise "out of the commission of torts by the Defendants against the Plaintiffs when these Defendants and their agents used illegal methods to collect a consumer debt from the Plaintiffs." (*Id.* at ¶ 2)

Specifically, Plaintiffs allege that, beginning in January 2013, Plaintiff Gross received dental services at DMD on several occasions, and incurred a debt which has never been paid. (*See id.* at ¶¶ 15, 16) Gross has dental insurance through Delta Dental, with respect to which DMD is an "in-network provider." (*Id.* at ¶ 17) Plaintiffs allege that under the contract between Delta Dental and DMD, "DMD (because it is an in-network provider with Delta) may not

1

'balance bill' members such as Mr. Gross 'for the difference between the Delta Dental Plan payment and DMD's submitted fee.'" (*Id.*; *see also* D.I. 1-1 Ex. C) According to the Complaint, Gross' January 2013 appointment was properly billed under the Delta Dental plan. (D.I. 1 at ¶ 20)

Gross visited DMD for additional dental services three times during September 2013 – but, unlike with his January visit, DMD recorded fees over and above the estimated insurance payment for each of the September visits. (*See id.* at ¶¶ 22-24) As alleged in the Complaint:

> On September 30, 2013 DMD received payment of $448.80 from Delta . . . . Nevertheless, in breach of its contract with Delta for Mr. Gross's benefit, DMD did *not* apply this insurance payment as payment in full for services . . . . Instead, DMD continued to record the $91.20 balance bill that was not covered by insurance as a fee still owed by Mr. Gross for service on September 18.

(*Id.* at ¶ 25) (emphasis in original) Plaintiffs further allege: "No statements were provided to Mr. Gross regarding any of his treatment bills or insurance payments for services provided by DMD." (*Id.* at ¶ 26)

Gross last visited DMD on October 17, 2013, for a routine cleaning. (*Id.* at ¶ 29) The day before, on October 16, 2013, Delta Dental notified DMD that Gross' annual maximum insurance benefit had been reached. (*Id.* at ¶ 28) However, DMD did not inform Gross at his appointment on October 17 that the visit would not be covered by his insurance plan. (*Id.* at ¶ 30) "As a result of DMD's actions, Mr. Gross unknowingly incurred a fee of $103.00 on October 17, 2013, for unnecessary services that would have been free to him in three (3) months [i.e., had he delayed the appointment until 2014]." (*Id.*)

On November 11, 2013, Gross received a billing invoice which itemized the October 17,

2

2013 teeth cleaning, and included a non-itemized $1,023.60 balance forward. (*Id.* at ¶ 31; D.I. 1-1 Ex. F) The bill also stated: "Your Account is 30 Days Overdue." (D.I. 1-1 Ex. F) Plaintiffs allege that this is the first billing invoice Gross ever received. (D.I. 1 at ¶ 31) Gross asked DMD to resubmit his bill to Delta, believing that his insurance had not yet been exhausted. (*Id.*)

Also in November 2013, Plaintiffs moved their residence and filed a change of address form with the Newark, Delaware Main Post Office. (*Id.* at ¶ 32) Although DMD issued two more billing invoices (in December 2013 and January 2014), Gross never received those bills. (*Id.* at ¶¶ 33-34) On January 14, 2014, DMD added a $337.98 collection agency fee to Gross' bill. (*Id.* at ¶ 37; D.I. 1-1 Ex. D)

On January 16, 2014, DMD sent Gross' account to WWF for collection of the $1,464.58 debt owed. (D.I. 1 at ¶¶ 38-39) Plaintiffs allege: "***All*** of these charges were unethical, because they occurred in violation of DMD's agreement with its patients to obtain insurance availability prior to service. . . . At the very least ***$742.18*** of these charges were illegal fees under the Delta contract ($404.20) and the FDCPA ($337.98)." (*Id.* at ¶ 39) (emphasis in original)

On April 1, 2014, Gross received a telephone call on his cell phone from Antonio Right, who "introduced himself as a lawyer with the law firm of Weinstein, Weinburg & Fox, LLC, and stated that he was calling to collect a delinquent debt in the amount of $1,509.08 on behalf of DMD." (*Id.* at ¶ 40) Gross received a letter, dated April 8, 2014, from "The Firm Weinstein, Weinburg & Fox, LLC" demanding payment in full of $1509.58, signed by Antonio Right, Senior Negotiator. (*Id.* at ¶ 67; D.I. 1-1 Ex. H) The Complaint contains further details regarding

3

Plaintiffs' interactions with Right. (*See* D.I. 1 at ¶¶ 41-66)[1]

## MOTION TO DISMISS

**Legal Standards**

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all allegations of a complaint. *See Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly*, 550 U.S. at 570. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir.

---

[1]Plaintiffs allege no facts regarding acts or omissions of Defendants Darren and Tyra Tillison. Rather, Darren and Tyra Tillison are alleged, upon information and belief, to hold themselves out as General Manager and Co-Owner, respectively, of WWF. (D.I. 1 ¶¶ 8-9; *see also* D.I. 1-1 Ex. A, B)

4

2008) (internal quotation marks omitted). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

**Discussion**

The Weinstein Defendants (i.e., the Tillisons and WWF) filed a motion to dismiss for failure to state a claim upon which relief may be granted. They argue that "the allegations are merely cursory and cannot be substantiated" and further that "plaintiffs are unable to present one iota of factual proof to support their claim(s)." (D.I. 12 at 1) Although not specified, the Court presumes that the Weinstein Defendants are moving for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). (*See id.* at ¶ 11) ("The plaintiff's Complaint must be dismissed for failure to state a claim upon which relief can be granted.")

Plaintiffs' Complaint alleges that WWF operates as a collection agency. (D.I. 1 at ¶ 6) It further alleges that Tyra Tillison is WWF's Co-Owner (*id.* at ¶ 9), and that Darren Tillison is its General Manager (*id.* at ¶ 8). While Plaintiffs primarily engaged with Defendant Right, in the course of these interactions they received a letter on WWF letterhead. (D.I. 1-1, Exh. H) Plaintiffs assert that the Weinstein Defendants are liable due to respondeat superior, alleging that the acts and omissions of the individual Defendants "were committed within the time and space limits of their agency relationship with their principals, Defendants DMD and WWF." (D.I. 1 at ¶ 71)

The Court will deny the Weinstein Defendants' motion to dismiss. With respect to

WWF, Plaintiffs have adequately alleged a claim on which relief may be granted. They specifically allege that they received a collection letter from WWF, signed by WWF Senior Negotiator Antonio Right, and they attach the letter to their Complaint. (D.I. 1-1, Exh. H) Plaintiffs have alleged that Right, as an employee of WWF, misrepresented himself to Plaintiffs in the course of collecting a debt. Moreover, Plaintiffs allege that WWF "used, controlled, and/or operated automatic telephone dialing systems" in violation of the Telephone Consumer Protection Act, 47 U.S.C. ¶ 227 *et seq.* (D.I. 1 at ¶¶ 12, 190-98)

The Court will also deny the motion to dismiss as it relates to Defendants Darren and Tyra Tillison. While the Complaint does not specifically allege how these individual Defendants were involved in the acts or omissions which constitute the basis for Plaintiffs' claims, it does allege that these Defendants are Co-Owner and General Manager of WWF. (*See id.* at ¶¶ 8, 9; *see also* D.I. 1-1, Exh. A, B) The Complaint further alleges in Count 20, entitled "Piercing the Corporate Veil," that "the actions of the owners and managers of WWF show that they have used control of their limited liability company to commit a fraud or wrong" and that "the owners and managers of this limited liability company have used the corporation to obtain unjust enrichment by collecting fees to which they are not legally entitled from the unwary public." (D.I. 1 at ¶¶ 211-14) These allegations are sufficient at this point. As importantly, Defendants' contention that Plaintiffs' Complaint is deficient because "plaintiffs have not provided any proof" and "[n]one of these allegations are supported by evidence" (D.I. 12 at ¶¶ 4-5) are improper bases for dismissal, as the Court is obligated given the procedural posture to take the well-pleaded factual allegations of the Complaint as true. Plaintiffs are not required to prove their allegations at this time, only to adequately plead them – which the Court concludes Plaintiffs have done.

6

Accordingly, the Court will deny the motion to dismiss.

## MOTION TO STRIKE OR FOR MORE DEFINITE STATEMENT

**Legal Standards**

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "A court is not required to accept affirmative defenses that are mere 'bare bones conclusory allegations,' and may strike such inadequately pleaded defenses." *Sun Microsys., Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 408 (D. Del. 2009). "Motions to strike are generally disfavored and ordinarily are denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties," *id.* at 402 (internal quotation marks omitted), "or if the allegations confuse the issues," *Karpov v. Karpov*, 2015 WL 348606, at *3 (D. Del. Jan. 16, 2015). "A motion to strike will not be granted where the sufficiency of the defense depends on disputed issues of facts or where it is used to determine disputed and substantial questions of law." *Cadence Pharm., Inc. v. Paddock Labs., Inc.*, 2012 WL 4565013, at *1 (D. Del. Oct. 1, 2012).

Federal Rule of Civil Procedure 12(e) allows a party to move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Rule 12(e) has been interpreted to make relief available where a pleading is unintelligible, *see CFMT, Inc. v. YieldUp Int'l Corp.*, 1996 WL 33140642, at *1 (D. Del. Apr. 5, 1996), or the issues cannot be determined, *see Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534, 536 (D. Del. 1962). *See also Container Co. v. Carpenter Container Corp.*, 8 F.R.D. 208, 210 (D. Del. 1948). "The decision whether to grant or deny a defendant's motion for a more

7

definite statement rests within the sound discretion of the court." *Holmes v. Colonial Sch. Dist.*, 2010 WL 4918721, at *1 (D. Del. Nov. 24, 2010). Motions for a more definite statement are generally viewed with disfavor, particularly "where the information sought by the motion could easily be obtained by discovery." *CFMT*, 1996 WL 33140642, at *1.

**Discussion**

Plaintiffs move (D.I. 13) pursuant to Rules 12(f) and 12(e) to strike multiple paragraphs and affirmative defenses from Defendant DMD's Answer (D.I. 10). In the alternative, Plaintiffs seek a more definite statement pursuant to Rule 12(e). Plaintiffs base their request of Federal Rule of Civil Procedure 8(b), asserting generally that DMD has not "fairly responded to the substance of the allegations." (D.I. 13 at ¶¶ 11-12) DMD "denies any impropriety with regard to its responses and affirmative defenses listed in the Answer to the Complaint based on the Federal Rules of Civil Procedure and case law discussed above." (D.I. 15 at 2)[2]

Rule 8(b) provides:

> **(1) *In General.*** In responding to a pleading, a party must:
>
> > (A) state in short and plain terms its defenses to each claim asserted against it; and
> >
> > (B) admit or deny the allegations asserted against it by an opposing party.
>
> **(2) *Denials – Responding to the Substance.*** A denial must fairly respond to the substance of the allegation.

---

[2]Plaintiffs have further requested that the Court strike DMD's response to the motion to strike (D.I. 15), because that response was filed on October 16, 2014, nine days past the deadline of October 7, and DMD has not shown just cause for its tardiness or even requested leave for its late filing. (D.I. 16) The Court will deny Plaintiffs' request to strike DMD's response as the Court has found it helpful to consider it; yet, having done so, the Court is granting the underlying motion to strike – just as it would have done had it not considered DMD's response.

8

> **(3) *General and Specific Denials.*** A party that intends in good faith to deny all the allegations of a pleading – including the jurisdictional grounds – may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.
>
> **(4) *Denying Part of an Allegation.*** A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.

With respect to at least many of the allegations of the Complaint, DMD's responses fail to meet the requirements of Rule 8(b)(1). For example, Paragraph 20 of the Complaint alleges, "On January 28, 2013, DMD received payment from Delta Dental with respect to the January 13 treatment, and applied it as payment in full for that treatment. Accordingly, DMD properly wrote off $13.00 not covered by the insurance payment from Delta." (D.I. 1 ¶ 20) DMD responds – as it does for at least 25 other paragraphs of the Answer[3] – as follows: "Wrongful conduct is denied by Answering Defendants and it [is] further denied that any conduct of Answering Defendants caused any injury, illness or damage of any nature to Plaintiffs." (D.I. 10 at ¶ 20)

As can plainly be seen, DMD failed to admit or deny the specific allegations of paragraph 20 (and the other paragraphs to which it filed the same response), which it is required to do by Rule 8(b)(1), instead relying on blanket denials of all "wrongful conduct." Likewise, DMD failed to comply with Rule 8(b)(2), which requires it to "fairly respond to the substance of the allegation." Additionally, it seems quite unlikely that DMD "in good faith" intends to deny the entirety of the allegation in paragraph 20 (and the like paragraphs). Attached to the Complaint is

---

[3]DMD includes the general response in well over one hundred paragraphs of its Answer (D.I. 10), although Plaintiffs specifically seek relief only on paragraphs 20-29, 31, 33-39, 98, 105, 110, 132, and 134 (*see* D.I. 13 ¶¶ 5, 15-16).

Gross' Account History Report, a document evidently prepared by DMD, showing the services rendered by DMD to Gross and payments received and the balance due. (D.I. 1-1, Exh. D) This Account History Report shows (for example) that on January 28, 2013, DMD wrote off $13.00 for services it provided to Gross on January 13, 2013. (*See id.*) Even assuming there is some portion of the allegation in paragraph 20 to which DMD may not yet be prepared to admit (e.g., whether the write-off was "proper" or whether it was for what was "not covered by the insurance payment from Delta"), Rule 8(b)(4) requires DMD to "admit the part [of the allegation] that is true and deny [only] the rest."

The Court next confronts the issue of the appropriate relief for DMD's failure to meet its obligations under Rule 8. Pursuant to Rule 8(b)(6), the Court could treat DMD's deficient pleadings as a failure to deny, and therefore treat Plaintiffs' allegations (in the 23 paragraphs at issue) as admitted. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). Plaintiffs ask the Court to strike the identified responses (D.I. 13 at ¶ 15), or in the alternative to order DMD to provide more definitive answers (*id.* at ¶ 16). Under the circumstances here, including the early stages of this case, the Court concludes that the better exercise of its discretion is to permit DMD to amend its answer to be in compliance with Rule 8. DMD is placed on notice that if its amended answer suffers from the same deficiencies as its original answer, the Court will be inclined to grant any reasonable request from Plaintiffs' for appropriate relief.

Turning to Plaintiffs' criticisms of DMD's pleading of affirmative defenses, the Court will deny Plaintiffs' request to strike affirmative defenses 5, 8, 9, 12, and 13. With respect to

affirmative defenses 8 and 9 – by which DMD contends "Plaintiffs have unclean hands" and "Plaintiffs' Complaint, and each cause of action therein[,] is barred by the Doctrine of Estoppel," respectively – Plaintiffs contend that "these defenses are alleged in conclusory fashion without any factual basis, thereby depriving plaintiff a *fair notice* of the grounds upon which defenses rests." (*Id.* at ¶ 17) (emphasis in original) The Court concludes that Plaintiffs have adequate notice and can learn in discovery what further information they need in order to respond to these affirmative defenses. *See generally Cadence Pharm.*, 2012 WL 4565013, at *1 ("It appears that a majority of the District Courts within the Third Circuit that have addressed the issue have determined that the heightened pleading requirements of *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* do not apply to the pleading of affirmative defenses.") (internal citations omitted).

Regarding affirmative defenses 5, 12, and 13 – alleging, respectively, "Answering Defendant had no duty to Plaintiffs," "Plaintiff[s'] demand in the Complaint would result in Unjust Enrichment," and "Plaintiff[s'] Complaint is frivolous" (D.I. 10 at 34) – Plaintiffs assert that, as a matter of law, they would prevail over each of those defenses (D.I. 13 at ¶ 20). Plaintiffs' predictions may turn out to be true, but the Court is not in a position to address the merits of the affirmative defenses. They are adequately alleged and the Court will not strike them.

With respect to affirmative defense 6, the Court will grant Plaintiffs' motion to strike. Affirmative defense 6 states: "Answering Defendants hereby give[] notice that they intend to rely upon any other affirmative defenses which become available or apparent during pretrial discovery or litigation proceedings in this action and hereby reserve the right to assert all such

affirmative defenses as though they were fully set forth herein." (D.I. 10 at 34) This statement gives Plaintiffs no fair notice of what they need to be prepared to address as this case goes forward. The more appropriate method for DMD to attempt to assert additional affirmative defenses later in this case is to file an amended pleading (or, if necessary, seek leave to do so).

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

### Legal Standards

Entry of default judgment is a two-step process. *See* Fed. R. Civ. P. 55(a), (b). A party seeking to obtain a default judgment must first request that the Clerk of the Court "enter the party's default" if the party "has failed to plead or otherwise defend" within the time required by the rules or as extended by a Court order. Fed. R. Civ. P. 55(a). Timely serving and filing a motion to dismiss under Fed. R. Civ. P. 12(b) precludes entry of default. *See, e.g., Catanzaro v. Fischer*, 570 F. App'x. 162, 165 (3d Cir. 2014). Once default is properly entered, the entry of judgment by default is within the discretion of the Court. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

### Discussion

Plaintiffs filed their motion for entry of default judgment against WWF on June 30, 2015. (D.I. 20) Plaintiffs alleges that WWF was properly served and has failed to appear, plead, or otherwise defend itself. (*Id.* at ¶ 10) Plaintiffs assert that although Defendants Darren and Tyra Tillison filed a motion to dismiss, which "purports to be filed on behalf of the corporate Defendant WWF" (*see id.* at ¶ 7), no attorney has entered an appearance on behalf of WWF, rendering the motion to dismiss inadequate to prevent entry of default and granting of a default judgment. The Tillison Defendants each appear *pro se*.

"It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993). "[T]he lower courts have uniformly held that 28 U.S.C. § 1654, providing that 'parties may plead and conduct their own cases personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." *Id.* at 202. No licensed attorney has entered an appearance on behalf of WWF in the 14 months this case has been pending. Accordingly, it was appropriate for the Clerk to enter the default of WWF (which it did on August 12, 2015). (D.I. 23) However, given the recency of the entry of default, the fact that the Court is today ruling on the other pending motions, and given that Plaintiffs will not be unfairly prejudiced by the Court providing WWF some limited additional time to retain counsel to enter an appearance on its behalf, the Court will deny the motion for default judgment, but without prejudice to Plaintiffs renewing that motion in the near future should no licensed attorney soon enter an appearance on behalf of WWF.

## CONCLUSION

An appropriate Order will be entered.

13