# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RANDALL GROSS and CLAIRE CHAMPAGNE, : :  Plaintiffs, : : v. : : WEINSTEIN, WEINBURG & FOX, LLC, ANTONIO RIGHT, DARREN TILLISON, and TYRA TILLISON, : : :  Defendants. : | C.A. No. 14-786-LPS |

## MEMORANDUM ORDER

At Wilmington, this **24th** day of **September, 2018**:

Pending before the Court is Plaintiffs Randall Gross and Claire Champagne's ("Plaintiffs") Motion for Damages, Attorneys' Fees and Costs (D.I. 57) and Plaintiffs' Motion to Strike Defendants Weinstein, Weinburg & Fox, LLC, Darren Tillison, and Tyra Tillison's ("Defendants") Sur-Reply (D.I. 62). Having reviewed the parties' submissions (D.I. 57-64), **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Damages, Attorneys' Fees and Costs (D.I. 57) is **GRANTED** and that Plaintiffs' Motion to Strike (D.I. 62) is **DENIED**. For the reasons set forth below, the Court concludes that Plaintiffs are entitled to actual damages in the amount of $10,000, statutory damages in the amount of $1,000 per Plaintiff, attorneys' fees in the amount of $12,258, and costs in the amount of $611.60.

On June 20, 2014, Plaintiffs filed a complaint with this Court alleging that Defendants violated provisions of the Fair Debt Collection Practices Act ("FDCPA") and used illegal

methods to collect a consumer debt from Plaintiffs.[1] (*See* D.I. 1) On August 30, 2017, the Court granted Plaintiffs' motion for entry of a default judgment, after Defendants failed to hire an attorney despite being provided with significant leniency and time to do so. (*See* D.I. 49)

Pursuant to the FDCPA, a debt collector who fails to comply with the FDCPA is liable for actual damages, statutory damages not to exceed $1,000 per plaintiff, reasonable attorneys' fees, and costs. 15 U.S.C. § 1692k(a).

### A.     Actual and Statutory Damages

Plaintiffs seek an award of actual damages to compensate for severe emotional distress and suffering as a result of Defendants' threats and intimidation, as well as statutory damages in the amount of $1,000 per Plaintiff. (*See* D.I. 57 at 7) Plaintiffs each provide affidavits in support. (*See* D.I. 57-1 (Affidavit of Randall Gross ("Gross Aff.")); D.I. 57-2 (Affidavit of Claire Champagne ("Champagne Aff."))) The Court also considers the allegations in the Complaint (D.I. 1), which have not been answered.

Mr. Gross affirms that on April 1, 2014, he received a telephone call from a man who identified himself as Antonio Right, a lawyer at Weinstein Weinburg & Fox ("WWF"), who purported to be collecting a $1,509 bill from Mr. Gross's dentist, Delaware Modern Dental ("DMD"). (*See* Gross Aff. at 1) Without providing any information about Mr. Gross's rights, Mr. Right stated that Mr. Gross had to pay by that Friday and threatened to file a lawsuit if Mr. Gross did not do so. (*See id.* at 2) "Feeling threatened and intimidated, as well as embarrassed to be discussing the matter while at work," Mr. Gross agreed and provided Mr. Right with his

---

[1] Claims against Delaware Modern Dental, LLC were voluntarily dismissed following settlement. (*See* D.I. 45)

2

debit card and bank account numbers. (*See id.*) When Mr. Gross returned home from work to his girlfriend and newborn baby, both of whom he supports financially, he realized he may be a victim of identity fraud and became frightened. (*See id.* at 2-3)

Having learned of what happened, Ms. Champagne became upset and worried and began researching WWF. (*See* Champagne Aff. at 1-2) She called the business and spoke to a man she believes was Darren Tillison, who threatened to sue her and have her and her boyfriend sent to prison. (*See id.* at 2) The man on the phone warned Ms. Champagne not to visit the office of WWF, insinuating that she may be beat up if she did. (*See id.*) Eventually, the man admitted he was not a lawyer and that WWF was not a law firm. (*See id.*) Mr. Gross also had another phone call with Mr. Right on April 8, 2014, during which Mr. Right continued to threaten, harass, and humiliate him. (*See* Gross Aff. at 4) Mr. Gross believes Mr. Right was actually Darren Tillison. (*See id.*)

As a result of Defendants' actions, Mr. Gross has "suffered emotional distress which manifests as mental anguish, fear, anxiety, depression, humiliation, and embarrassment" and is too frightened to return to the dentist for needed dental care. (*See id.* at 4-5) As a result of Defendants' actions, Ms. Champagne affirms that she "became anxious to the point of being terrified," because she feared imprisonment and suspension of her and Mr. Gross's drivers licenses. (*See* Champagne Aff. at 2-3) She could not focus on anything but researching her legal rights and protecting her family from Defendants' threats. (*See id.* at 3) Having previously suffered from manic depression/anxiety disorder, Ms. Champagne had a manic episode that became so severe that she was hospitalized for about a week. (*See id.* at 1, 3) Both Mr. Gross and Ms. Champagne suffered additional emotional distresses including, among other things,

negative impacts on their family relationships and financial stresses. (*See id.* at 3; Gross Aff. at 3-4) In sum, the only actual damages claimed by Plaintiffs is emotional distress, which this Court has held is compensable as actual damages in a FDCPA case. *See Howze v. Romano*, 1994 WL 827162, at *3 (D. Del. Dec. 9, 1994) (awarding $5,000 in actual damages to compensate for emotional distress as result of abusive debt collection practices).

Plaintiffs have not quantified the amount of actual damages they are seeking, leaving that amount to the discretion of the Court. Based on the Gross and Champagne Affidavits, in addition to the allegations in the Complaint, the Court concludes that Plaintiffs have demonstrated that damages are warranted for emotional distress as a result of Defendants' threatening and harassing conduct towards them.

In determining the amount of liability, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). The Court finds that Defendants persisted in their violations of the FDCPA and did so intentionally. In an unauthorized sur-reply, Defendants argue that Rule 55 of the Federal Rules of Civil Procedure "mandates that a default judgment may be issued by the clerk of the court when there is a 'sum certain,'" and that there is no "sum certain" here.[2] (D.I. 61 at 1) However, through this Order, the Court will provide a sum certain for the default judgment. Having considered the entire record, the legal factors under the statute, and emotional distress damages awards in other

---

[2]Plaintiffs move to strike Defendants' sur-reply as having been filed without first receiving the Court's permission. (*See* D.I. 62) Because Defendants are proceeding *pro se*, the Court is denying the motion to strike.

FDCPA cases,[3] the Court concludes that Plaintiffs should be awarded actual damages in the amount of $10,000.

Statutory damages in an amount of no more than $1,000 per plaintiff per lawsuit may also be awarded under the FDCPA. *See Robertson v. Horton Bros. Recovery, Inc.*, 2007 WL 2009703, at *3 (D. Del. July 3, 2007). In this case, each Plaintiff bases his or her claim on individual contacts by Defendants that violated the FDCPA. In these circumstances, the Court concludes that the conduct of Defendants toward each Plaintiff warrants damages in the amount of the statutory maximum. Accordingly, Plaintiffs will be awarded $1,000 each in statutory damages.

## B. Attorneys' Fees

Attorneys' fees are a mandatory remedy under the FDCPA. *See Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). In calculating reasonable attorneys' fees, the Court employs

---

[3] *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513-14 (5th Cir. 1982) (upholding $10,000 actual damages award where plaintiff was humiliated, embarrassed, and upset, even though plaintiff did not have out-of-pocket expenses or suffer physical harm); *Campbell v. Bradley Fin. Grp.*, 2014 WL 3350054 (S.D. Ala. July 9, 2014) (awarding $15,000 in emotional distress damages when plaintiff paid illegitimate debt for fear of legal action based on threatening phone calls); *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007) (upholding $85,000 jury award for emotional distress without physical injury); *Barker v. Tomlinson*, 2006 WL 1679645 (M.D. Fla. June 7, 2006) (awarding $10,000 for emotional distress where defendant called plaintiff at work to demand payment for illegitimate debt, threatened her with arrest if she did not pay, and faxed request for arrest warrant to her workplace); *Chiverton v. Fed. Fin. Grp., Inc.*, 399 F. Supp. 2d 96, 104 (D. Conn. 2005) (awarding $5,000 in actual damages for embarrassment, anxiety, and shame); *Howze*, 1994 WL 827162, at *3 (awarding $5,000 in actual damages for "emotional distress, embarrassment, humiliation, irritation and anger"); *Bryant v. TRW, Inc.*, 487 F. Supp. 1234 (E.D. Mich. 1980), *aff'd* 689 F.2d 72 (6th Cir. 1982) (upholding $8,000 actual damages award where plaintiff suffered "embarrassment, anxiety, humiliation and emotional distress" but no out-of-pocket expenses); *Millstone v. O'Hanlon Reports, Inc.*, 383 F. Supp. 269, 276 (E.D. Mo. 1974), *aff'd* 528 F.2d 829 (8th Cir. 1979) (awarding $2,500 in actual damages "suffered by reason of his mental anguish and had symptoms of sleeplessness and nervousness").

the "lodestar" approach. *See Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000). "The Third Circuit has defined the lodestar method as the initial estimate of a reasonable attorney's fee . . . properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Student Pub. Interest Research Grp. v. AT & T Bell Labs.*, 842 F.2d 1436, 1441 (3d Cir. 1988) (internal quotation marks omitted). Reasonable hours are calculated by "review[ing] the time charged, decid[ing] whether the hours set out were reasonably expended for each of the particular purposes described and then exclud[ing] those that are excessive, redundant, or otherwise unnecessary." *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal quotation marks omitted). A reasonable hourly rate is determined by reviewing the prevailing market rates in the community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). A prevailing market rate is the rate "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (internal quotation marks omitted). The prevailing party bears the burden of establishing the reasonableness of both the time expended and the hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Calculation of the lodestar does not end the inquiry, as the Court may adjust the lodestar upward or downward. *See id.* In adjusting the lodestar, the Court may consider twelve factors (the "Johnson factors").[4] *See Hensley*, 461 U.S. at 434. A party seeking adjustment of the

---

[4]The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,

lodestar bears the burden of proving the necessity of the adjustment. *See Blum*, 465 U.S. at 898.

In support of Plaintiffs' motion for attorneys' fees, Plaintiffs submitted an Affidavit of Mary Higgins (D.I. 57-3) ("Higgins Aff."), an attorney, an Affidavit of Mary Anne McLane (D.I. 57-4) ("McLane Aff."), another attorney, and itemized time sheets for both Higgins and McLane (D.I. 57-5) ("Time Sheets"). Ms. Higgins is an experienced FDCPA litigator at the Law Office of Mary Higgins and charged $295 per hour for 27.4 hours of work, totaling $8,083 in fees. (Higgins Aff. at 1, 3) Ms. McLane is also an experienced FDCPA litigator at the Law Office of Mary Higgins and charged $250 per hour for 16.7 hours of work, totaling $4,175 in fees. (McLane Aff. at 1, 3) Having reviewed the Time Sheets and the attorneys' affidavits, as well as the Johnson factors, the Court finds that Plaintiffs' attorneys' fees are reasonable and will award Plaintiffs attorneys' fees in the amount of $12,258.

### C. Costs

Finally, Plaintiffs request an award of $611.60 in costs. (*See* D.I. 57 at 13) Having reviewed Plaintiffs' Bill of Costs and supporting materials (D.I. 57-6), as well as the attorneys' affidavits, the Court finds that the costs are reasonable and will award Plaintiffs costs in the amount of $611.60.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to **CLOSE** this case.

_____
HON. LEONARD P. STARK
UNITED STATES DISTRICT COURT

---

and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).